# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**UNITED STATES OF AMERICA**

**V.**                                    **NO. 4:04CR00035-04-WRW**

**VERTIS CLAY**

### ORDER

Pending is Defendant's Motion to Suppress (Doc. No. 226). The Prosecution has responded (Doc. No. 228) and a hearing was held on May 30, 2006. Post hearing briefs were also filed.[1]

Defendant argues that: (1) the affidavit lacks probable cause to believe that anything incriminating would be found at the 2008 Moss St. house; and (2) the clothes seized at the house were not named in the affidavit and were the product of a warrantless search.[2]

**BACKGROUND**

After investigating the murder of Darryl Johnson in his Pine Bluff home, DEA agent Vannatta submitted an application for a warrant to search the house at 2008 Moss St., North Little Rock, Arkansas for evidence of drug trafficking and a death caused by a firearm related to drug-trafficking. The affidavit submitted when Agent Vannatta applied for the warrant is paraphrased below:

> On July 22, 2003, the body of Darryl Johnson was discovered in his home in Pine Bluff. The physical evidence revealed that there was a forced entry through a bathroom window, and that clothing, a Glock .40 pistol, and frozen meat were

---

[1] Doc. Nos. 253, 254.

[2] Doc. No. 253.

missing from the house. The police also discovered a plastic storage tub that "smelled of marijuana," with the name and address of Benny Naito-Gastelum inside.

On July 28, 2003, the DEA spoke with a confidential informant ("CI") who said Johnson, Calvin Stovall, and a "Mexican" (who owned two houses in Sherwood and whom Stovall had been incarcerated with) were involved in a drug trafficking conspiracy, including cocaine, MDMA, and marijuana. Stovall is a convicted felon with an arrest for cocaine distribution and no legitimate employment, although he drives fancy cars. The CI gave a cell phone to Stovall and had observed Stovall and Johnson "break down" packages of marijuana and conceal the repackaged marijuana in a hidden compartment in a utility truck. The CI told the agents that Johnson told him that Stovall was going to "rip" the "Mexican" because Stovall felt he was paying too much for the drugs. Stovall asked Johnson to disappear for a few weeks and in return he would pay Johnson $60,000. On June 21, 2003, Johnson told the CI that Stovall "ripped off the Mexicans" and immediately disappeared. Stovall did not reappear until after the discovery of Johnson's body.

In August 2003, DEA agents interviewed another CI who had met Stovall at a half-way house after prison. The CI had introduced Stovall to Naito-Gastelum. According to the CI, Naito-Gastelum supplied Stovall with marijuana, cocaine, and MDMA. Naito-Gastelum asked the CI to check on his residences while he was out of town, and after the CI reported that the houses had been broken into, Naito-Gastelum said he thought that Stovall was responsible. In mid-July 2003, the CI received $80,000 in cash and a letter from Stovall, which were to be delivered to Naito-Gastelum in California.

The following was gathered from an April 2004 interview of Darryl Walker: Walker was cell mates with Vertis Clay while incarcerated at the Pulaski County Detention Facility. Clay told Walker that he owned two businesses in Little Rock and that he worked as an enforcer for "Kid" (whom the affiant believes to be Stovall), and that Walker should start working for Clay and "Kid" after his release. Clay told Walker that "Kid" would pick him up when he was released. When Clay was released, Walker observed him getting into a yellow Hummer, which Clay had told him belonged to "Kid."

On July 15, 2003, Walker contacted Clay to try to get some work. On July 18th, 2003, Clay picked up Walker and told Walker that he had a job to do in Pine Bluff which would pay well. Clay told Walker that "Kid's nephew" stole 200 lb. of marijuana and at least 4 kg of cocaine from Kid. Clay told Walker that they would go to Pine Bluff and retrieve the stolen drugs from "Kid's nephew," who was actually Johnson. Walker described specific details of Johnson's torture and murder. He also stated that he and Clay took Johnson's clothes, a Glock .40, bags of frozen meat, and a gallon zip-lock bag containing MDMA from Johnson's house. Agents corroborated Walker's information with forensic evidence.

Walker also informed police that he and Clay returned to the Little Rock area on July 20, 2003. After that, they took the frozen meat to a woman's house in Conway. Once they left Conway, they went to a house at 2008 Moss St., North Little Rock. After Clay turned on the electricity to the house, he and Walker took Johnson's clothes inside the house. Clay also told Walker to remove his own clothes, put them in a trash bag, and take some of Johnson's clothes as replacements. After changing clothes and unloading Clay's vehicle, they left.

Walker stated that the house appeared abandoned from the outside but was nicely furnished. According to a records check, Jessie and Ora Clay, the parents of Vertis Clay, own the house at 2008 Moss St.

Finally, a third CI informed police that the Moss St. house is utilized by David Tidwell, a drug trafficking associate of Stovall, as a stash house.[3]

Based on the above affidavit, United States Magistrate Judge Forster issued the warrant to search 2008 Moss St., North Little Rock, Arkansas for "contraband and proceeds from the sale of controlled substances, instrumentalities" used in violation of 21 U.S.C. § 846 and 18 U.S.C. 924(j). Specifically, the following items were listed in the warrant as items to be seized: controlled substances or contraband (including firearms); equipment, records and other papers relating to drug-trafficking; address or telephone books; papers evidencing money transactions in violation of 21 U.S.C. § 846; currency, jewelry, and other items of value; photographs or video; and computers or computer records.[4] The warrant was executed on April 24, 2004.

During the search, DEA agents seized a handgun, clothing identified as Johnson's, various papers, and other evidence from the house at 2008 Moss St. According to DEA Agent Karen Fehrenbach, who was at the house when the search was executed, any items that were

---

[3]May 30, 2006 Hearing, Defendant's Exs. 1 and 2.

[4]May 30, 2006 Hearing, Defendant's Exs. 1 and 2.

seized that were not specifically listed on the warrant were immediately apparent as incriminating.[5]

In the motion to suppress, Defendant argues that there was a lack of probable cause to issue the warrant, and that the agents were not entitled to seize items not specifically listed on the warrant.

### DISCUSSION

#### A. Probable Cause

Defendant asserts that the warrant was not supported by probable cause. In reviewing a probable cause determination made by a magistrate judge, the court should give great deference to the magistrate's decision, and should use common sense in reviewing his decision.[6] If the magistrate had a substantial basis for concluding that a search would reveal evidence of wrongdoing or contraband, the issuing of the warrant should be upheld.[7] Hearsay evidence is admissible to determine probable cause "so long as a substantial basis for crediting the hearsay is presented."[8]

There is "a presumption of validity with respect to the affidavit supporting a search warrant."[9] In order to challenge the affidavit, the challenger must make allegations that are more than conclusory, and which contain an offer of proof that the affidavit contains deliberate

---

[5] May 30, 2006 Tr. at 20-23.

[6] *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

[7] *Id.*

[8] *Id.* 241-42.

[9] *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

falsehoods or a reckless disregard for the truth.[10] Negligence or innocent mistake is insufficient to invalidate an affidavit.[11]

The warrant relies, in part, on information given by CIs, who asserted that Stovall and Johnson were involved in drug trafficking activities, and that Clay's house was used as a stash house. When a warrant affidavit relies on information given by CIs, the magistrate must determine the value of the information based on the reliability of the CIs and basis of the information.[12] Where one CI corroborates "specific, consistent details" given by another CI, that information is "reciprocally corroborative, rendering their information enough to support a finding of probable cause."[13]

Here, the affidavit relies on information given by two different CIs. Information establishing the reliability of either informant is lacking. However, the CIs' information concerning the drug trafficking operation run by Calvin Stovall and Benito Naito-Gastelum is specific, contains details that would not be available to a member of the public, and is consistent between the two informants. This evidence is sufficient to support a conclusion that there was probable cause that Stovall and Naito-Gastelum (although not necessarily Vertis Clay) were involved in a drug trafficking conspiracy.

The information from a third CI, who stated that Clay's house was used by Tidwell as a stash house, is of more concern. There is nothing which would indicate the reliability of the informant and nothing to indicate the basis of his knowledge. The affidavit does not include any

---

[10]*Id.*

[11]*Id.*

[12]*Gates*, 462 U.S. at 230.

[13]*United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998).

specific details (such as what kind of drugs were in the house or the amounts) nor does it indicate whether the police did any kind of follow-up investigation to corroborate that source's allegation. So, the information that Clay's house was being used as a stash house cannot be considered reliable.

Finally, the warrant affidavit relies on statements given by Darryl Walker concerning the events surrounding Johnson's murder in July, 2003. Walker testified that Clay worked for a drug dealer named "Kid" (who the affiant identified as Calvin Stovall, although he does not mention the source of that information). Walker's statements included details that only someone present at the murder scene could have known, and were corroborated by physical evidence; therefore there was sufficient evidence to establish probable cause that the house at 2008 Moss St. contained Johnson's clothes, which were taken from the crime scene, as well as other contraband.

In fine, based on all of the information in the affidavit, "including the veracity and basis of knowledge" of the informants and Mr. Walker, there was a "fair probability that contraband or evidence of a crime" would be found at 2008 Moss St.[14] Accordingly, the magistrate had a substantial basis for determining that probable cause existed.

### B.  Staleness

Because these events occurred 9 months before agents applied for the warrant, Defendant contends that the information was stale, and, therefore, unreliable.[15] In reviewing the probable

---

[14] *Gates*, 462 U.S. at 238.

[15] Doc. No. 253.

cause determination, there is no set standard for determining when information is stale. However, the nature of the crime and the property to be searched are to be considered.[16]

Based on the information available to the magistrate at the time, it was likely that the evidence remained in the house, since, according to Walker, the house appeared abandoned and had the electricity turned off. The affidavit specifically refers to the victim's clothing, a Glock, handgun, and a back of MDMA. It also mentions Defendant's involvement as an enforcer for Stovall and Naito-Gastelum's drug trafficking enterprise.[17] The warrant application does not specifically list the victim's clothing as an item to be seized, but it specifically lists "firearms" and mentions the firearm taken from Johnson's house.[18] Since I must give great deference to the judgment of the magistrate, Magistrate Judge Forster's determination of probable cause was not unreasonable.

### C. The Good Faith Exception

The Prosecution asserts that even if the warrant was not supported by probable cause, the evidence should be admissible because the officers executed the warrant in good faith.[19]

---

[16] *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006) (finding that a search warrant for drugs and weapons in a home was not invalid which was based on information that had been given to the police within the past 72 hours, and surveillance indicated that criminal activity was ongoing). *See also*, *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995) (information that was even three years old was not stale when searching for a firearm, because "firearms enthusiasts" tend to "keep their weapons for long periods of time."). *But see*, *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005) (finding that information in affidavit was too stale to support probable cause where the information was of an "unknown and undetermined vintage" about the location of "mobile, easily concealed, readily consumable and highly incriminating narcotics" with no information concerning an ongoing narcotics operation).

[17] May 30, 2006 Hearing, Defendant's Exs. 1 and 2.

[18] May 30, 2006 Hearing, Defendant's Exs. 1 and 2.

[19] Doc. No. 228.

Defendant contends that the good faith exception does not apply here because the affidavit contained stale information and lacked any "probable cause to believe that contraband associated with either drug trafficking or murder would be found" at 2008 Moss St.[20]

The United States Supreme Court has held that as long as the officers acted in good faith in executing a warrant they objectively believed to be valid, the search will be valid.[21] However, the warrant cannot be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[22]

Here, there is no evidence that the warrant affidavit is based on false statements or omissions; that the police had any reason to believe that the information in the warrant was false; or that the magistrate "rubber stamped" the warrant. Additionally, the officer's reliance on the warrant was objectively reasonable. Accordingly, even if the warrant was not supported by probable cause -- which it was -- the good faith exception would apply.

### D.     Plain View Doctrine

Defendant contends that any evidence not specifically listed in the warrant should be suppressed as outside the scope of the warrant, and not subject to the plain view doctrine.[23]

The plain view doctrine allows evidence to be seized without a warrant when, "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating nature is immediately apparent, and (3)

---

[20] Doc. No. 253.

[21] *United States v. Leon*, 468 U.S. 897, 923 (1984).

[22] *Id.*

[23] Doc. No. 253.

the officer has a lawful right of access to the object itself."[24]  A lawful search includes all areas and containers in which the items sought might be found.[25]  "The immediately apparent requirement means that the office must have probable cause to associate the property with criminal activity."[26]

From the search at 2008 Moss St., the agents seized, among other things, three boxes of clothes, white plastic trash bags full of clothes, a pair of neon blue alligator shoes, a metal Air Jordan shoe box, a black velour track suit, and a leather jacket with a "unique" collar.  None of these items were explicitly listed in the warrant.  However, in interviews with agents before the search was conducted, Ms. Roberts -- Mr. Johnson's sister -- described several items that were missing from Mr. Johnson's house, e.g. a metal Air Jordan shoe box which usually contained marijuana, scales, and a gun; a pair of neon blue alligator shoes; a black velour track suit; leather jackets.[27]

The warrant authorized the police to search for papers and controlled substances, and the agents had a right to search anywhere those items might be found.  Additionally, from the video tape of the search, it is clear that the seized items listed above were in plain view and that they were obvious to Agent Fehrenbach as items that "had been previously described by Ms. Roberts" when she was interviewed on July 28th, 2003.

---

[24]*United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991) (citations omitted).

[25]*Id.*

[26]*United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997) (citations omitted).

[27]*Id* at 10-11 and 38.  Specifically, Ms. Roberts informed the agents that Mr. Johnson kept scales, a gun, and marijuana in a box that was missing from his home. *See* May 30, 2006 Tr. at 58.

Even if Agent Fehrenbach or other agents had to move other items in order to view the seized clothing, they had a right to do so in their search for papers and other small contraband.

## CONCLUSION

The warrant was supported by probable cause. In view the deference given to the magistrate's probable cause decision, the affidavit sufficiently details enough information -- that Clay was involved in a drug trafficking conspiracy as an enforcer and that Clay was involved in a drug trafficking related murder -- to believe that evidence of those crimes might be found at 2008 Moss St.  Even if the warrant was not supported by probable cause, the search was valid under the "good faith" exception.  Finally, items seized that were not specifically enumerated in the warrant are admissible under the plain view doctrine.

Accordingly, Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED this 1st day of November, 2006.

/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE